| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC#<br>DATE FILED: 9/30/2016 |

KENNETH SMITH,

                Plaintiff,

– against –

THE CITY OF NEW YORK, P.O. DANIEL PANTALEO, SHIELD # 13293, P.O. JOSEPH TORRES, P.O. CHRISTIAN CATALDO, P.O. HOWARD, P.O. WHITE, P.O. PHILIP VACCARINO, P. O. HERBERT, SGT. CHERNYAVSKY, SGT. IGNAZIO CONCA, LT. SWEENEY, CAPT. MARK MOLINARI, and POLICE OFFICER JOHN DOE 1-5,

                Defendants.

**OPINION AND ORDER**

14-CV-9069 (ER)

Ramos, D.J.:

      Kenneth Smith ("Plaintiff") brings suit against The City of New York ("Defendant" or "the City") and various named and unnamed New York City Police Department Officers (collectively, "the Officers" or "Defendants") pursuant to 42 U.S.C. § 1983. The Defendants who have appeared move for summary judgment on Plaintiff's claim of false arrest under Rule 56 of the Federal Rules of Civil Procedure. Defs.' Mem. L. Supp. Mot. Dismiss ("Defs. Mem."), Doc. 47. For the reasons stated below, the Defendants' motion to dismiss is GRANTED.

**Factual Background**[1]

On February 13, 2012, at approximately 2:10 in the afternoon, Sgt. Henry Chernyavsky of the New York City Police Department met with a confidential informant ("CI") working under his direction in the vicinity of 225 Park Hill Avenue in Staten Island. *See* Declaration of Sergeant Henry Chernyavsky, attached as Ex C. to the Declaration of Brian Francolla (Doc. 60) ("Chernyavsky Decl.") at ¶ 2; *see also* Def. 56.1 Stmt. ¶ 1. Sgt. Chernyavsky searched the CI, gave him $20, and instructed him to purchase marijuana from Apartment 6D of 225 Park Hill Avenue ("Apt. 6D"). Chernyavsky Decl. ¶ 2. Approximately twenty minutes later, the CI was observed entering the front door of 225 Park Hill Avenue. *Id*. Ten minutes later, the CI was observed leaving the building. *Id*. The CI then met with Sgt. Chernyavsky at a separate location and reported to him that he, the CI, had met with an individual named "Dre" in Apt. 6D, and purchased one zip[2] of marijuana and one ecstasy pill from "Dre" for the $20. *Id*. The CI then handed the marijuana and ecstasy to Sgt. Chernyavsky. *Id*. The CI was searched again and paid an amount of money as compensation. *Id.*

The very next day, on February 14, 2012, at approximately noon, Sgt. Chernyavsky met with the CI again in the vicinity of 225 Park Hill Avenue. Id. at ¶ 3. Once again, the CI was searched, given $20, and instructed to purchase marijuana from Apt. 6D. *Id.* At approximately 12:25 p.m., the CI was observed entering the front door of the building, and was observed leaving approximately 10 minutes later. *Id.* The CI then met with Sgt. Chernyavsky at a

---

[1] The following facts are taken from Defendants' 56.1 Statement ("Def. 56.1 Stmt.") (Doc. 49), the Complaint ("Compl.") (Doc. 1), and Plaintiff's Counter Statement to Defendants' 56.1 Statement ("Pl. 56.1 Stmt.") (Doc. 57).

[2] "Zip" refers to zip lock baggies, which are commonly used to package and distribute narcotics and marijuana. *United States v. Pignard*. February 6, 2007, 2007 WL 431863, *2 (S.D.N.Y. 2007).

2

separate location and reported to him that he, the CI, had met with an individual named "JD-Pop" in Apt. 6D, and purchased one zip of marijuana and one ecstasy pill from "JD-Pop" for the $20. *Id.*  The CI then handed the marijuana and ecstasy to Sgt. Chernyavsky. *Id.*  The CI identified "JD-Pop," as a person whose real name he knows to be Kenneth Smith, the Plaintiff, and who lived in Apt. 6D with four other people. *Id.* at ¶ 4.  The CI was again searched and paid an amount of money as compensation. *Id.*

On February 15, 2012, armed with the aforementioned information concerning the purchases of drugs in Apt. 6D the two previous days, Sgt. Chernyavsky swore out an application for a search warrant for the apartment before the Honorable Alan J. Meyer, Justice of the Supreme Court for Richmond County. Def. Stmt. ¶ 8.  In preparation for the execution of the warrant, a sketch was made of the apartment based on information provided by the CI that indicated which individual used each of the three bedrooms within the apartment, including Plaintiff. *Id.* ¶ 14; Declaration of Brian Francolla ("Francolla Decl."), Doc. 60, Ex. E p. 2.  The search warrant was executed the following day, February 16, 2012, resulting in the seizure of a total of 43 zips of marijuana, drug packaging and $685 is U.S. currency. Def. Stmt. ¶¶ 11, 13.  In particular, 15 zips of marijuana and drug paraphernalia were found in the room believed to belong to Plaintiff. *Id.*  ¶ 15.

The search also resulted in the arrest of four individuals, including Plaintiff. *Id.* ¶ 11.  Plaintiff was arrested while walking on the street in the vicinity of 225 Park Hill Avenue, which Plaintiff alleges is a short distance from his home. Compl. ¶ 21.  At the time of Plaintiff's arrest, he was not in possession of any drugs or contraband. *Id.* at ¶ 22.  Plaintiff was detained for over 30 hours, at which point the charges against him were dismissed by Judge Meyer and he was released. *Id.* at ¶ 24.  Plaintiff filed the instant suit on November 13, 2014. Doc. 1.

*Background concerning Kenneth Smith.*

Plaintiff is an African American male and a resident of Richmond County (Staten Island), New York.  Compl. ¶ 6.  Approximately two months prior to his arrest in the instant case, Plaintiff was arrested in connection with the execution of a search warrant at 205 Targee Street in Staten Island, a location believed to be his prior residence.  Def. 56.1 ¶ 16; Francolla Decl., Ex. G.  That search warrant, like the instant one, was also executed after two successful controlled purchases of marijuana by a confidential informant.  *Id.*  Plaintiff was present in the Targee Street location at the time that previous search warrant was executed, and he was arrested after a loaded firearm and marijuana were seized there.  *Id.*  Sgt. Chernyavsky was also involved in the execution of that warrant.  *Id.*

*Background concerning the CI.*

Prior to the execution of the search warrant in the instant case, the CI had provided information that led to the issuance of 8 other search warrants which resulted in the seizures of drugs.  Def. 56.1 ¶ 7; Francolla Decl., Ex. B ¶ 3.  On December 6, 2011, the CI was examined by the Honorable Mario Mattei and found to be "credible and reliable."  *Id.*

## I.     Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might "affect the outcome of the litigation under the governing law."  Id. (quoting *Miner v. Clinton Cty*.

N.Y., 541 F.3d 464, 471 (2d Cir. 2008)).  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc*., 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp*., 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

Nonetheless, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial.  There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so

overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted). "[W]hen an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer." *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010) (citing *Budde v. H & K Distrib. Co.*, 216 F.3d 1071 (2d Cir. 2000)).

## II. Discussion

### A. Admissibility of Defendants' Evidence

Defendants have filed the instant motion for summary judgment after answering the Complaint. Only very "little discovery" has taken place thus far, and no depositions have taken place. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Mem.") (Doc. 54) p. 7. The evidence Defendants ask the Court to consider thus consists entirely of police reports and court documents. *See* Francolla Decl. Exs. A-G. No deposition transcripts or fact affidavits have been submitted. Plaintiff's response, in the main, consists of an objection to the admissibility of Defendants' evidence on hearsay grounds. *See* Pl. Mem. pp. 6-8. Plaintiff is mistaken, however, that the Court may not rely on the proffered documents, and the information gathered from those documents, in support of Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1. Doc. 49. *See Breeden v. City of New York*, No. 09-CV-4995 (ARR) (JMA), 2014 WL 173249, at *1 (E.D.N.Y. 2014) (on motion for summary judgment, rejecting plaintiff's objection to the majority of defendants' factual submissions on the grounds that they were only supported by police reports that are

inadmissible evidence, and determining that where plaintiff asserts no other objection to dispute a fact, the court will regard such fact as undisputed

Police reports may be admissible under the Federal Rules of Evidence either as business records, Fed. R. Evid. 803(6), or as public records, Fed. R. Evid. 803(8). *United States v. Carneglia*, 256 F.R.D. 384, 391 (E.D.N.Y.2009); *see also Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir.1991) (police report itself is admissible as a public record). These reports can be authenticated pursuant to Federal Rule of Evidence 901(a) by evidence sufficient to support a finding that the item is what the proponent claims it is. Federal Rule of Evidence 901(b)(7) expressly provides that public records such as police reports may be authenticated by "[e]vidence that: (A) a document was recorded or filed in a public office as authorized by law; or (B) a purported public record or statement is from the office where items of this kind are kept." *See also Carneglia*, 256 F.R.D. at 391. The threshold for authentication is "relatively low," particularly in the absence of a specific challenge to the authenticity of a document by the opposing party. *Lachira v. Sutton*, No. 3:05cv1585 (PCD), 73 Fed.R.Evid. Serv. 536, 2007 WL 1346913, at *2–3 (D. Conn. May 7, 2007) (quoting *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F.Supp.2d 377, 391–92 (S.D.N.Y.2005)). Here, the declaration of Sgt. Chernyavsky, which is based on personal knowledge, provides a sufficient foundation for the admissibility of the reports as business records, *see* Declaration of Sergeant Henry Chernyavsky, attached as Ex C. to the Declaration of Brian Francolla (Doc. 60) ("Chernyavsky Decl."), and Plaintiff has provided no argument to cast doubt on the likelihood of their authenticity. *Al-Mohammedi v. The City of Buffalo*, No. 13-CV-1020 (RJA) (MJR), 2016 WL 1748264, at *4 (W.D.N.Y. 2016) (rejecting a challenge to the authenticity of police reports where they were submitted through the declaration of counsel for police department).

The statements of the CI contained in the police reports are not inadmissible hearsay where, as here, they are not offered for the truth of the matter asserted but for purposes of establishing whether the arresting officers had information giving them probable cause. *Breeden v. City of New York*, No. 09-CV-4995 (ARR) (JMA),2014 WL 173249, at *5 (E.D.N.Y. 2014); *see also Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 605-606 (S.D.N.Y. 2013) ("to the extent that the police report includes statements made by the confidential informant, such statements are admissible since [d]efendants do not offer them for their truth but rather as evidence that the statements were made and provided [d]efendants with reasonable suspicion to stop [defendant's] vehicle." *Williams v. City of N.Y.*, No. 10–CV–2676 (JG)(LB), 2012 WL 511533, at *3 n. 2 (E.D.N.Y. Feb. 15, 2012) (witness statements recorded in police reports are not inadmissible hearsay because they are not offered for the truth of the matter asserted, but for purposes of establishing probable cause); *Al-Mohammedi*, 2016 WL 1748264, at *3 (statements of witnesses contained in police reports are not inadmissible hearsay when they are not offered for the truth of the matter asserted but for the purpose of establishing probable cause).  A statement is admissible non-hearsay when it is offered as evidence of the effect of a statement on the listener, the knowledge motivating his actions, or his state of mind at the relevant point in time. *See United States v. Puzzo*, 928 F.2d 1356, 1365 (2d Cir.1991).  Thus, the Court may rely on the information set forth in the police reports and forms that reflects statements by the CI, but only as to their effect on the listener or officer and not as to the truth of the matter asserted. *Al-Mohammedi*, 2016 WL 1748264, at *4.

### B. False Arrest

In order to establish a § 1983 claim for false arrest, Plaintiff must prove (1) that the defendant intentionally confined plaintiff, (2) that plaintiff was conscious of the confinement and

did not consent to it, and (3) that the confinement was not otherwise privileged. *See Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir.2003) (quoting *Broughton v. State*, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335 N.E.2d 310, 314 (N.Y.1975)).  Here, it is clear that:  Defendants intentionally arrested Plaintiff; Plaintiff was aware of his arrest; and he did not consent to it.  Thus, the only disputed element is whether the confinement was privileged.  If, however, Defendants had probable cause to arrest Plaintiff, then the confinement is privileged, *id.* at 135, because the existence of probable cause constitutes a complete defense to a § 1983 false arrest claim. *Covington v. City of N.Y.*, 171 F.3d 117, 122 (2d Cir.1999) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d. Cir.1996)); *see also Simpson v. City of New York*, 793 F.3d 259 (2d Cir. 2015) (to avoid liability for a claim of false arrest, an arresting officer may demonstrate that either:  (1) he had probable cause for the arrest; or (2) he is protected by qualified immunity).

### C.  Probable Cause

The existence of probable cause may be determined as a matter of law on summary judgment where there is no material dispute as to the relevant events and knowledge of the officers.  *See Weyant*, 101 F.3d at 852.  Probable cause to arrest exists when law enforcement officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir.1999) (quoting *Weyant*, 101 F.3d at 852).  When determining whether probable cause existed to support an arrest, courts are to "consider those facts available to the officer at the time of the arrest and immediately before it" and must render a decision based upon "the totality of the circumstances." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006); *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon

9

the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.").

In addition, the so-called "imputed knowledge doctrine" allows a police officer making a probable cause determination "to rely on the allegations of fellow police officers" in the absence of significant evidence to the contrary. *Spears v. City of N.Y.*, No. 10–CV–03461, 2012 WL 4793541, at *6 (E.D.N.Y. Oct.9, 2012) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir.2006)).  Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation. *See United States v. Colon*, 250 F.3d 130, 134 (2d Cir. 2001), quoting *United States v. Hensley*, 469 U.S. 221, 230–33 (1985); *United States v. Canieso*, 470 F.2d 1224, 1230 n. 7 (2d Cir.1972).  "The rule exists because, in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates." *United States v. Valez*, 796 F.2d 24, 28 (2d Cir.1986).

On the facts presented, Defendants have clearly met their burden of establishing probable cause to arrest Plaintiff.  In the first instance, the Defendants were working with a CI that had provided reliable information on many previous occasions. *See United States v. Morales*, 851 F. Supp. 112, 116 (S.D.N.Y. 1994) (complaint affidavit setting forth instances in which information supplied by government's cooperating witness in the past had been corroborated established reliability of witness).  Three days before the arrest, the CI, working under the direction of Defendants, told the officers that he had purchased marijuana and ecstasy from an individual

10

living in Apt. 6D.  The CI told the officers that Plaintiff also lived in Apt. 6D.  Two days before the arrest, again acting under the direction of the Defendants, the CI returned to Apt. 6D and told the officers that on that occasion he purchased marijuana and ecstasy directly from Plaintiff.  The CI also told the officers which bedroom in Apt. 6D belonged to Plaintiff.  When the Defendants executed the search warrant on the day of the arrest, they seized 15 zips of marijuana and drug paraphernalia from the bedroom they believed to be Plaintiff's.

In addition to the foregoing, at the time of Plaintiff's arrest, Sgt. Chernyavsky was familiar with him as he had arrested Plaintiff approximately two months prior for narcotics and weapons offenses under very similar circumstances:  the execution of a search warrant at the place where Plaintiff lived based on controlled purchases of drugs at that location.  *See Thompson v. City of New York*.  592 Fed. Appx. 36, 37 (2d Cir. 2015) (relying, in part, on arresting officer's knowledge of defendant's criminal history as part of the totality of circumstances establishing probable cause).

As a result of the execution of the warrant, Plaintiff was arrested as he walked on the street in the vicinity of 225 Park Hill Avenue.  While Plaintiff had no drugs or contraband on his person when he was arrested, the aforementioned circumstances nonetheless provided the arresting officers with at least probable cause to believe that Plaintiff had constructive possession of the drugs found in his bedroom.  *Jenkins v. City of New York*, 2013 WL 870258  at *9  ("[t]he doctrine of constructive possession allows the police to find probable cause to arrest anyone in a dwelling when contraband is discovered in plain view and it reasonably appears that all members of the dwelling exercised dominion and control over the area in which the contraband is found," (quoting *Takacs v. City of N.Y.*, 2011 WL 8771384, at *3 (S.D.N.Y. Jan.24, 2011)); *see also Abreu v. Romero*, 2010 WL 4615879, at *6 (S.D.N.Y. Nov.9, 2010) ("Where there is evidence

that an individual is in constructive possession of contraband, police officers have reasonably trustworthy information sufficient to believe the crime of possession is being committed and therefore have probable cause to arrest."), *aff'd,* 466 F. App'x 24 (2d Cir.2012).

Although Plaintiff was not in the apartment and had no marijuana on his person when he was arrested, he need not have been in the apartment, nor in actual possession of the marijuana, for the Defendants to be able to establish probable cause based on constructive possession of the marijuana. *See, e.g., United States v. Coiscou*, 793 F. Supp. 3d 680, 686 (S.D.N.Y. 2011) (concluding that defendant constructively possessed marijuana plants in an apartment other than the one he was arrested in, in part, because had keys to the apartment and was seen going in and out of the apartment on a number of occasions in the past six months. In any event, lack of residency does not negate the existence of probable cause where other factors support a finding of constructive possession. *See id.* (finding that the Government was not "obligated to establish, for probable cause purposes, that [defendant] either rented or lived in . . . the apartment[].")

### D. Qualified Immunity

Moreover, as Defendants point out, on the facts of this case, even if probable cause were not established, the Defendants are entitled to qualified immunity. Summary judgment may be granted on the basis of qualified immunity only where "no reasonable jury, viewing the evidence in the light most favorable to the Plaintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law." *Felmine v. City of N.Y.*, No. 09–CV–3768 (CBA) (JO), 2011 WL 4543268, at * 10 (E.D.N.Y. Sept. 29, 2011) (quoting *Ford v. Moore*, 237 F.3d 156, 162 (2d Cir.2001)). In light of the evidence described above, this is such a case. The officers had information they reasonably believed to be reliable that Plaintiff resided at, and sold narcotics from, Apt. 6D. When they executed the warrant they found evidence of

drug trafficking in the bedroom they believed to be Plaintiff's. Based on the foregoing, a reasonable officer would have drawn the conclusion that Plaintiff had control over the marijuana found in his bedroom.

Finally, the Court notes that, even if there were a doubt as to the existence of probable cause, there was most certainly at a minimum arguable probable cause giving rise to qualified immunity. "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir.2004) (internal quotation marks omitted)

### III.  Conclusion

For the foregoing reasons, Defendants' motion for summary judgment on Plaintiff's § 1983 claim for false arrest is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 47, and close the case.

It is SO ORDERED.


Dated:   September 30, 2016
         New York, New York

                                                        _____
                                                        Edgardo Ramos, U.S.D.J.